**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—--------------------------------------------------X

ADRIANNA MANZELLA, MICHELE
DZULA, Individually and on
behalf of all others similarly situated,
as Class Representatives,

       Plaintiffs,

                                    Case No:
                                    CLASS AND COLLECTIVE ACTION
                                    JURY DEMAND

v.

SELECT REHABILITATION LLC and
SELECT PT, OT & SLP REHABILITATION
NEW YORK PLLC, d/b/a SELECT REHAB,
ANNA GARDINA WOLFE, and MICHAEL
CAPSTICK individually,

       Defendants.

_____X.

## COLLECTIVE ACTION AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

       Plaintiffs, ADRIANNA MANZELLA and MICHELE DZULA, individually, and on behalf of all others similarly situated, pursuant to 29 U.S.C. 216(b), of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law ("NYLL"), §650 *et. seq.* sues Defendants, SELECT REHABILITATION LLC (hereinafter "Select"); SELECT PT, OT & SLP REHABILITATION NEW YORK PLLC ("Select NY"); and their owners, managing managers and officers: Anna Gardina Wolfe individually, and Michael Capstick, individually (herein together referred to as the "Management Team"; together with the corporate Defendants combined as "Defendants", to recover unpaid wages pursuant to the FLSA and NYLL laws, and state as follows:

## NATURE OF THE CLAIMS

1.      Plaintiffs bring this action, on behalf of themselves and on behalf of all other similarly situated persons to recover overtime wages which Defendants failed to pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq.,* and the New York Labor Law ("NYLL"), §650 *et. seq.;* Plaintiffs also seek payment of all wages for meal breaks which they neither took or which were not bona fide, non-working meal breaks pursuant to NYLL.

2.      Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and on behalf of all other similarly-situated persons who are/were employed by Defendants in the State of New York as **Directors of Rehab (DOR)** and/or **Therapists** who were not paid the required overtime compensation at a rate of one and one-half their regular rate of pay for all hours worked in excess of 40 hours per work week for the period of January 30, 2020 to the date of the final disposition of this action (the "FLSA Collective Period"). Plaintiffs and all such other similarly situated persons are jointly referred to as the "FLSA Collective".

3.      For the purposes of this action, **Directors of Rehab (DOR)** are defined as non-exempt, hourly-paid employees who manage the therapy staff and therapy services at each facility or location.  **DOR** are synonymous with and intended to include other names used by Defendants to describe the same position during certain times, including Program Managers (PM), or Rehab Directors (RD) and/or any other job title of persons employed to perform work similar to **DOR.**

4.      For the purposes of this action, **Therapists** are defined as non-exempt, hourly-paid employees who perform therapy services; including but not limited to Occupational Therapists (OTR), Certified Occupational Therapy Assistants (COTA), Physical Therapists (RPT), Physical

Therapist Assistants (PTA), and Speech Language Pathologists (SLP) and/or any other job title of persons employed to perform work similar to **Therapists**.

5.      Together, Plaintiffs, DOR, Therapists and the FLSA Collective are all similarly situated because they were all subject to Defendant's common policy and/or practice of failing and refusing to pay overtime compensation for all hours worked in excess of 40 hours per week during the FLSA Collective Period.

6.       Plaintiffs' claims under NYLL are brought individually, and as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 23 on behalf of all other similarly-situated persons who are/were employed by Defendants in the State of New York as **DOR** and/or **Therapists** who were not paid the required overtime compensation at a rate of one and one-half their regular rate of pay for all hours worked in excess of 40 hours per work week for the period of January 30, 2017 to the date of the final disposition of this action (the "NYLL Class Period"). Plaintiffs and all such other similarly situated persons are jointly referred to as the "NYLL Class".

7.      The NYLL Class are similarly situated because, during the NYLL Class Period, they were all subject to Defendants' common policy and/or practice of not paying overtime compensation for all hours worked in excess of 40 hours per week during the NYLL Class Period; and, all suffered to have to work without bona fide meal breaks of 30 minutes of non-working, uninterrupted breaks thus violating NYLL.

8.      Defendants, by and through its management and 2 named owners and managing members, including but not limited to Wolfe (CEO of both named corporate Select Defendants and managing member of Select and Select NY); Capstick (as President of both Select entities and managing member of the same) knows that DOR, Therapists, Pathologists and others performing

similar duties under various job titles routinely worked overtime hours off the clock, and as well routinely worked without uninterrupted meal breaks of at least 30 minutes..

9.      In this pleading, "Defendants" means all the named Defendants and any other subsidiary or affiliated, related by shared ownership, or wholly owned corporation, predecessor corporation, or any parent corporation or entity responsible for the employment practices complained of herein (discovery may reveal additional defendants that should be included).

10.      The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiffs bear the burden of pleading, proof, or persuasion.  Plaintiffs reserve all rights to plead in the alternative.

<u>**JURISDICTION AND VENUE**</u>

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

12.      This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

13.      Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because Plaintiff Manzella resides in this district and because a substantial part of the events giving rise to the claims occurred in this District where she worked for Defendants as a therapist in Bronx, New York.

14.      This Court has Supplemental Jurisdiction over the NYLL claims wage claims and any related NYLL claims pursuant to 28 U.S.C. §1367, and thus has jurisdiction over the proposed NYLL Class.

15. Plaintiffs' claims are properly consolidated as a single action because their claims involve the same defendants, arise from the same nexus of facts and circumstances, and involve nearly identical issues of fact and law.

16. The Court has simultaneous jurisdiction over the Collective Action Allegations and the Class Action Allegations. See *Calderone, et al. v. Scott,* No. 2:14-cv-00519-JES-CM (11th Cir. Sept. 28, 2016) (holding that "a § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding."); *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011); *See also Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 479 (S.D.N.Y. 2013) ("Among FLSA cases, the most complex type is the 'hybrid' action … where state wage and hour violations are brought as an 'opt out' class action … in the same action as the FLSA 'opt in' collective action.

17. Alternatively, this Court has subject matter jurisdiction over this action under the Class Action Fairness Act, now codified in 28 U.S. Code § 1332 - Diversity of citizenship. This action involves claims greater than $5 million dollars in damages for all employees in the State of New York, and the two named Plaintiffs are citizens of different states than Select, which is a Delaware corporation, and the Management Team whose principal place of business is in Illinois.

18. This Court has personal jurisdiction over the Defendants under New York's Long Arm Statute, New York Civil Practice Law § 301 and 302 because Defendant Select NY is a New York corporation, and together with its owners and managers operate a business within this state, at their NY office, locate at 25 Harry Howard Avenue, in Hudson New York 12534-1601. All Defendants jointly operate, manage and staff facilities at numerous locations throughout this state, and act as joint employers over hundreds of Program Managers and Therapists in New York both presently and over the preceding 6 years.

19.     Moveover, Defendant Select owns or rents office space in New York, and provides services and transacts business in New York directly with its related and affiliated entity, Select NY and the Management Team Defendants.

## RELATED MATTERS

20.     This matter is related to a currently pending action in the United States District Court for the Middle District of Florida. *See Mclaughlin et. al. v. Select Rehabilitation LLC*, Case no:   3:22-cv-00059-HES-MCR. The *McLaughlin* case seeks a nation-wide collective action for off-the-clock overtime violations of the FLSA and other related state law claims.   In the *McLaughlin* matter, defendant Select Rehabilitation denies that it employed *any* Program Managers or Therapists in the State of New York, and denies any joint-employer relationship.

21.     In another related matter in the Superior Court of the State of California, County of Monterey, plaintiffs seek class certification against defendant Select Rehab for violations of California State overtime laws related to off-the-clock overtime violations. *See Rati Gandhales v. Select Rehabilitation LLC.* Case N0 20CV002240

22.     In *Hebert v. Select Rehabilitation LLC,* Case No. 4:21-cv-00524 filed in the United States District Court, for the Eastern District of Arkansas, the Plaintiff, a therapist, filed similar claims as the Plaintiffs here for unpaid overtime violations related to suffering to work off-the-clock overtime hours without being paid. The *Herbert* matter was settled with the payment by Defendant of some amount of wages to Plaintiff Hebert pursuant to the Court Order Granting Motion to Approve the Settlement on 8/18/22.

## THE PARTIES

A. **PLAINTIFFS MANZELLA AND DZULA:**

   **CLASS REP AND PLAINTIFF ADRIANNA MANZELLA**

23.     Plaintiff, ADRIANNA MANZELLA resides in the Bronx, New York.  She was recruited by and hired by Defendants jointly in July 2019, as a Therapist. Manzella was hired in the field of Speech and Language Therapy; worked under the  title of Speech and Language Pathologist (SLP); and assigned to work in a long term health care facility in the Bronx. The health care facility was managed, and staffed by Defendants where Manzella provided therapy generally to seniors.   Manzella separated her employment with the Defendants on or about April 2021.

24.     Plaintiff Manzella at all times was treated and classified by Defendants as an hourly paid, non-exempt employee.

25.     Manzella's primary job duty as a SLP was to provide therapy to patients within her specialty of speech and language, and to document her treatment in Electronic Medical Records ("EMRs") on programs such as Casamba or Rehab Optima.

26.     Plaintiff Manzella was assigned a corporate work schedule of Monday to Friday, generally 9:00 am to 5:00 pm.  She reported to Defendant's Directors of Rehabilitations (a.k.a. Rehab Director or  Program Manager).

27.     Throughout Plaintiff Manzella's employment, she was assigned a 'productivity' production rate, last known to be 92%. From company communications, Manzella was made to understand that the failure to hit this productivity number would lead to disciplinary action and/or termination of employment.

28.     Throughout Manzella's employment, she was routinely required to work off the clock and more than 40 hours per week without being paid an overtime premium for all these hours worked.  Manzella would routinely work anywhere from 30 minutes to 1 hour per day or longer to complete notes and do so off the clock like other Therapists at the facility.

29.     Plaintiff Manzella routinely worked off the clock hours over 40 in the workweek in order to meet the productivity requirements and maintain her employment, and similar to Dzula, found that working more than 40 hours in a week was necessary to complete all the required job duties.

**<u>CLASS REP AND PLAINTIFF MICHELE DZULA</u>**:

30.     Plaintiff MICHELE DZULA resides in North Tonawanda NY, and was hired and recruited by Defendants to work as a Director of Rehab (a.k.a. Program Manager) as well as an Occupational Therapist (DOR-OT) beginning in August 2018, and which continued until her separation from employment in approximately May, 2022.

31.     Plaintiff Dzula worked primarily at the Our Lady of Peace Skilled Nursing and Rehab Center in Lewiston, New York, managed and staffed by Defendants.

32.     Throughout Plaintiff Dzula's term of employment as a Director of Rehab and Therapist for Defendants, she routinely worked more than 40 hours per week, (50-60 hours per week) without being paid premiums for the overtime hours worked.

33.     When Dzula was hired, she communicated and negotiated with  human resources personnel who worked for Select out of Illinois.  Dzula was ultimately hired and on-boarded by Select's human resources personnel. Select's human resources handled all her hiring, set her compensation and provided Dzula with a Select employee handbook on behalf of Select NY .

34.     When Dzula was hired, she was given a Select Rehabilitation Employee Handbook (Therapy Services Personnel) Revised: 04.01.18.  The first line of the Handbook states, "This Employee Manual is intended to be a guide to the practices and procedures of Select Rehabilitation, LLC's (Select Rehab or Company) therapy services personnel, including therapists, assistants and rehab techs." See attached <u>Exhibit 1</u>.

35.     From Dzula's work and communications with HR and her superiors, it was understood that this employee handbook applied to all Select Rehab Employees across the USA, and not just the Select NY employees, whose name is not listed in this handbook.

36.     Throughout Dzula's employment, she believed she worked for Select Rehab LLC, as her work was directed by superiors (Area Managers/Directors and VP's) who were employees of  Select Rehab LLC and who all reported to the Select Rehab corporate office in Illinois.

37.     Plaintiffs Dzula's W2 declares and demonstrates that although the wages were paid by the entity named "Select PT OT & SLP Rehabilitation", this entity shared corporate offices with Select Rehab located at 2600 Compass Road, Glenview, Il 60026.  Dzula's W-2 is attached as Exhibit 2.

38.     More importantly, one of the persons who directed Plaintiff Dzula's work and was her direct supervisor, was Regional Manager or Director, Tanya Cooke.  A copy of her Linkedin profile is attached as Exhibit 3, and Cooke is and was an employee of Select, not Select NY, and she lives and works outside of the state of NY.

39.     From communications and interactions with Tanya Cooke, Dzula learned that Cooke was an employee of Select Rehab LLC and that she oversaw three Select facilities in New York, including the facility where Dzula worked. But Cooke also oversaw facilities in Ohio, Pennsylvania, and North Carolina.  Ms. Cooke lived and worked out of Ohio.

40.     Throughout Dzula's employment, anytime there were meetings or discussions with her superiors, any reference to "company" policies or procedures related to policies and practices created by and enforced by Select Rehab LLC. Moreover, the policies and practices applied on a national scale and  not just for New York employees.

41.     Plaintiff Dzula also received an email from Select Rehab's Human Resources employee, Kim Fernandez.  This email is attached as <u>Exhibit 4</u>.  Ms. Fernandez's signature block on the enclosed letter states, HR Department, Select Rehabilitation, LLC; 2600 Compass Rd Glenview, IL 60026, and her Linkedin profile, attached as <u>Exhibit 5</u>, shows she works from the corporate Select Rehab LLC office in Illinois, and is and was a Select Rehab employee.

42.     On May 4, 2022, Plaintiff Dzula received a letter from Select Rehabilitation LLC concerning her change in employment status, which likewise expressly and explicitly, confirms that Dzula is an employees of Select, and that her work was directed and managed by Select Rehab LLC, concurrently with Select NY.  The letter is attached as <u>Exhibit 6</u>. The letter is signed by a "Select Rehabilitation, LLC. Representative."  The letter also states, "However, due to the nature of our industry, we ask that you provide **Select Rehabilitation, LLC**. with a (30) thirty-day notice in the event you decide to voluntarily terminate your employment with us in order to assist in the transition period."

43.     As an Occupational Therapist (OT) and a Director of Rehab, Plaintiff Dzula was responsible for a therapy productivity rate in addition to her Director of Rehab duties. This meant that Dzula was required to treat a certain number of patients during her workweeks, and needed to meet a certain percentage of billable time for this treatment. Defendants told Directors of Rehab and Therapists, including Dzula, that these productivity requirements were a job requirement, not just a goal.

44.     Dzula was aware that Tanya Cooke terminated 6-7 Therapists for not meeting their productivity requirements.  Dzula was also aware that other Therapists were warned that they were not meeting their productivity requirements and were subject to being fired.

45.     Defendants knew that Therapists, including occupational therapists, certified occupational therapist assistants, physical therapists, and speech pathologists, could not meet this productivity requirement in 40 hours of time during a week and complete all job duties and responsibilities, including reporting and entering notes, treatment plans, discharge and initial evaluations, and attending numerous meetings.

46.     Throughout Dzula's employment, she was warned against clocking or reporting more than 40 hours per week, and was subjected to the productivity requirements which precluded her from being able to report all overtime hours worked.

47.     Dzula was required to meet productivity expectations for patient treatment at a set percentage for the week, each day the total hours worked and reported for the week had to account for set % of time spent   treating patients and billable time, in addition to all her other job responsibilities as a Director of Rehab, including scheduling and staffing, and reporting, holding meetings and as well entering notes as a Therapist.

48.     In addition to working 40 and more hours of work during the week, on weekends, Dzula spent a minimum of one hour working on scheduling and staffing matters, including messages and phone calls with staff and working in and with the associated databases and/or platforms or programs.

49.     As a Director of Rehab, aside from being required to treat patients for upwards of 4 hours per day (40% productivity), Dzula was to perform numerous job duties assisting with the performance of other administrative duties, including any as delegated or required by or as assigned by the location and regional manager.

50.     When Dzula complained of the inability to complete all job duties within a 40-hour work week, including working on weekends and outside the office hours during the week, her

manager/director made it clear that she either kept up and did all the work off the clock, and even on weekends and that on call duties were also off the clock or she would suffer disciplinary action.

51.     When Plaintiff Dzula was behind, she could not delegate her job duties and responsibilities to other employees to avoid incurring overtime hours and could not refuse to handle scheduling and staffing issues during evenings and weekends, and simultaneously she was prohibited from clocking in for this work outside the office despite it being required and necessary.

52.     Plaintiff Dzula was required to work on her days off in order to keep up with her job duties and responsibilities, and her superior knew of this.

53.     Moreover, Plaintiffs could not cancel patients or just walk out the door for the day after exactly 8 hours of work; and they could not fail to report to work on Friday or leave early to avoid overtime hours from being incurred. Plaintiffs often did not know how many hours their workweek would require until the very end of the week, given all their job duties and responsibilities, including treating patients.

54.     In addition to working 40 or more hours of work during the week, on weekends, Dzula spent at least 1 hour or more routinely working on scheduling and staffing matters, including messages and phone calls with staff.

55.     Dzula could not refuse to handle employee and staffing or scheduling matters on her days off, and to the contrary were expected and required to handle these required job duties yet not record all this time on the timeclock.

56.     Plaintiffs were paid a base hourly rate of pay, and not a salary, and upon information and belief all other Directors of Rehab and Therapists were paid as hourly, non-exempt employees during the 6 years preceding the filing of this complaint.

57.     Upon information and belief some newly hired Directors of Rehab hired after January 2021 were paid on a salary basis and classified as exempt employees. However, the majority of Directors of Rehab currently employed remain as hourly, non-exempt employees.

**B.  DEFENDANTS: SELECT REHABILITATION LLC AND SELECT NY**

58.     Defendant SELECT PT, OT & SLP REHABILITATION NEW YORK PLLC (hereinafter "Select NY") is a foreign, Delaware corporation with offices in NY, and may be served through its designated registered agent:  C/O Corporation Service Company, 80 State Street, Albany, NY, 12207.  Upon information and belief, Select NY is owned and operated by Co-Defendants Anna Wolfe and Michael Capstick..

59.     Select NY allegedly provides professional physical, occupational and speech therapy services in skilled nursing facilities and other locations throughout New York.

60.     Plaintiffs Manzella, Dzula, members of the FLSA Collective and members of the NYLL Class were allegedly paid by Select NY's payroll account, but all the payroll is processed and handled by Select at the Select corporate office in Glennville, Illinois.

61.     Select NY is an employer within the definition of the FLSA and NYLL. Select NY has revenues exceeding $500,000 annually and employs more than 2 persons and thus is required by the FLSA and NYLL to pay overtime premiums to Plaintiffs and all those similarly situated.

62.     Select NY entered into a Practice Support Services Agreement with Co-Defendant Select Rehabilitation LLC.  ("Select")

63.     In the Practice Support Services Agreement, Select agrees to provide Select NY the following services:

   a.  Office Space;

   b.  Collection of all Select NY's accounts receivable, and accounts payable;

    c.   Payroll and human resources records and administration;

    d.   Electronic Medical Records and electronic clinical information systems used by Program Managers and Therapists in the performance of their jobs;

    e.   Recruiting, hiring and firing and compensation of Therapists and Program Managers; AND

    f.   Select and Select NY agreed to cross indemnify each other for all claims and causes of action.

64.    In reality, Select NY is nothing more than a shell corporation or alter ego for Select. This is evidenced by the fact that Select and Select NY's principal place of business are both listed as 2600 Compass Rd, Glenview, IL 60026. Moreover, Select NY's owners are identical to the owner/directors of Select.

65.    Defendant, SELECT REHABILITATION LLC ("Select") is a Delaware, for Profit Limited Liability Corporation, with its principal place of business located at 2600 Compass Rd, Glenview, IL 60026. At all times material hereto, Select has routinely and consistently conducted business in the State of New York pursuant to the Practice Support Services Agreement. Select owns or rents office space in New York at 25 Harry Howard Avenue, in Hudson New York 12534-1601.

66.    Select also handles all billing for Select NY, bills Medicare and obtains the revenues for the therapy services of the NY employed therapists.

67.    According to Select's website, Select is:   "The premier provider of contract rehabilitation, as well as for nurse and therapy consulting services and employs over 17,000 therapists in the U.S."

68.     Select also reports that it has 2,300 facilities operating in 43 States in the US.  Upon information and belief, Defendant employs a Program Manager at each location and anywhere from 5 to 20 Therapists at each of these locations.

69.     Select is an employer within the definition of the FLSA and NYLL. Select NY has revenues exceeding $500,000 annually and employs more than 2 persons and thus is required by the FLSA and NYLL to pay overtime premiums to Plaintiffs and all those similarly situated.

### C.  INDIVIDUAL DEFENDANTS: WOLFE AND CAPSTICK

70.     Defendant ANNA GARDINA WOLFE ("Wolfe") (aka Anna Gardina), is a foreign resident, but an owner/member of both Select Rehab and Select NY. Wolfe serves as the CEO of both entities which she runs, manages and directs from the Corporate office in Illinois with the other managing LLC member, Co-Defendant Capstick. See https://www.selectrehab.com/leadership.html.

71.     Defendant MICHAEL CAPTSTICK ("Capstick") is a foreign resident, but an owner/member of both Select Rehab and Select NY, and serves as the President of both entities, which he runs, manages and directs from the Corporate office in Illinois jointly with Wolfe.

72.     Wolfe and Captick are employers as defined under the FLSA and the NYLL, as they have day to day operational control over both corporate Defendants, and concurrently, and created and enforced the unlawful pay practices complained of herein, in addition to directly and indirectly directing the work of the Plaintiffs and class and classes of similarly situated.

### D.  JOINT EMPLOYERS

73.     Directors of Rehab (aka Rehab Directors or Program Managers) and Therapists working in the State of New York have performed work on behalf of or for the benefit of Select.

74.    The day-to -day operational control of both Select and Select NY are handled by Wolfe and Captstic, who are the respectively CEO and president of both companies, plus owners/LLC managing members, working from the Select's corporate office in Illinois.

75.    All Human Resources matters, recruiting and hiring are handled by Select, and through the Select HR staff.

76.    All the job postings for positions in the state of NY are created by Select, according to Select company job descriptions, and all compensation to be paid to new hires is determined and set by Select.

77.    It's no mere coincidence that the company policies and procedures for Select NY are the mere adoption of the Select policies and procedures and other terms and policies as set forth in the Select employee manual.

78.    Select, Select NY, Wolfe and Capstick are joint employers of Plaintiffs and the FLSA Collective and NYLL Class as they created the productivity standards or requirements, directed the work of the plaintiffs and all the class and collective members and otherwise created the company policies and procedures on a national scale.

79.    Select NY primarily provides the same services as Select and employs Therapists and Directors of Rehab (aka Program Managers) at numerous health care and nursing home facilities in the same manner as Select. However for some regulatory, tax or billing reason, the workers in New York are paid by Select NY (although payroll, human resources and supervision is handled by Select from the Illinois corporate office).

80.    All human resources matters, decisions on hiring, recruiting, firing and disciplinary actions and the directions of the work of the employees of Select NY and its facilities or locations are directed by Select, Wolfe and Capstick. Together Select NY, Select, Wolfe and Capstick are

joint employers of Plaintiffs, the FLSA Collective and NYLL Class pursuant to the FLSA and NYLL.

81.     Upon information and belief, Select also bills Medicare for the services provided by all Select NY's employees, and thus is clearly performing work in this state, and another indicator of Select being a joint employer over all Select NY employees.

82.     The supervision and oversight of employees working in the State of New York are handled by Select and its employees from Illinois. This includes but is not limited to control exercised by Regional Managers, Directors, VP's, and other Select officers, including ultimately by President Chapstick and CEO Anna Gardina Wolfe, who also concurrently serve as President and CEO respectively from the Illinois office, and the rest of the Select leadership team.  See: https://www.selectrehab.com/leadership.html

83.     Select Rehab and Select NY share employees, employment policies, payroll processing, compensation and employment policies, employee handbooks, Human Resources employees and matters, recruiting and hiring, employee benefits and compensation plans, offices, officers and the supervisors of the NY employees (Regional Managers) are all directed by Select employees.

84.     All Select NY employees work is overseen by, directed, and controlled by Select employees, and all Select NY employees are subject to Select company policies and rules and productivity requirements.

85.     Select NY employees are also led to believe through hiring, onboarding, training, and communications with Select employees, attendance at meetings that they were Select employees, who were in fact performing work for and on behalf of and for the benefit of Select.

86.     Select is an employer of all Select NY employees as defined by the FLSA Section 203, and a Joint employer over all the Select NY employees.

87.     Upon information and belief, Select NY is an affiliated, sister, subsidiary, or related entity to Select. Select NY and Select jointly operate as a single integrated enterprise and single employer of Plaintiffs.

88.     Select obtained a financial benefit from the work performed by Select NY employees and the hours billed to Medicare.

89.     Select and Select NY operate as an integrated single business enterprise, with shared marketing, shared contracts for services, shared employees and officers and, operating and managing the companies from a single corporate office in Glenview, Illinois.  Select NY even does business under the name and logo of Select Rehab; Select NY is essentially the alter ego of Select Rehab LLC.

90.     More importantly, the VP's, area or regional managers and directors who specifically direct the work of Select NY's Directors of Rehab and Therapists, are Select employees, and who deliver and enforce Select policies onto Select NY's Directors of Rehab and Therapists.

## THE FLSA COLLECTIVE GROUP(S) DEFINED

91.     This FLSA section 216(b) collective action arises from a longstanding and continuing wrongful scheme by Defendants to: a) willfully fail to accurately and properly track and record the work hours of Directors of Rehab and Therapists, and b) willfully refuse to pay overtime wages to a large class or classes of non-exempt, hourly paid employees who Defendants knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

92.    Plaintiffs bring this suit individually, and on behalf of all similarly situated persons composed of the following FLSA Collective members in either a single class of similarly situated employees or 2 classes of similarly situated (hereafter referred to as the FLSA Collective or FLSA Collective Program Manager Class or the FLSA Collective Therapist Class):

**If a Single Collective Group/Class, All hourly paid non-exempt employees (the FLSA CLASS):**

> **All persons employed as hourly paid Program Manager, Director of Rehab, Program Directors, Occupational Therapists (OTR), Physical Therapists (RPT), Certified Occupational Therapy Assistants (COTA), Physical Therapist Assistants (PTA), Speech Language Pathologists (SLP), or other persons performing similar hourly, non-exempt positions under various other job titles used to describe the same positions, and who are currently employed by, or were previously employed in the State of NY by Select Rehabilitation LLC or by Select PT OT & SLP Rehabilitation NY PLLC within the three years preceding the filing of this lawsuit to the date of trial in this action**

**If Two Classes or separate groups:  (Plaintiffs may proceed with seeking conditional certification of 2 separate classes or groups of similarly situated (CLASS A and CLASS B) as follows:**

**CLASS A:    ALL PROGRAM MANAGERS/DIRECTORS OF REHAB AS FOLLOWS (FLSA Program Manager Class):**

> **All persons employed as hourly paid Program Managers, Directors of Rehab, Program Directors or other persons performing similar hourly, non-exempt management or supervisory positions under various other job titles, and who are currently employed by, or were previously employed in the STate of NY by Select Rehabilitation LLC or Select PT OT & SLP Rehabilitation NY PLLC within the three years preceding the filing of this lawsuit to date of trial in this action.**

**CLASS B:  ALL THERAPISTS (FLSA Therapists Class):**

> **All persons employed as an hourly paid Occupational Therapist (OTR), Physical Therapist (RPT), Certified Occupational Therapy Assistant (COTA), Physical Therapist Assistant (PTA), Speech Language Pathologist (SLP), or other persons performing similar hourly, non-exempt positions under various other job titles, and who are currently employed by, or were previously employed in the State of NY by Select Rehabilitation LLC or Select PT OT &**

**SLP Rehabilitation NY PLLC within the three years preceding the filing of this lawsuit to date of trial in this action.**

## COMMON FACTUAL CLASS AND COLLECTIVE ALLEGATIONS

93.     Plaintiffs are able to protect and represent the putative Class or Classes, and they are willing and able to.

94.      Plaintiffs Manzella and Dzula are familiar with the pay practices, company policies and procedures going back to 2019 and 2018 and thus each year to the present day.

95.     Plaintiffs routinely worked more than forty (40) hours in their workweeks throughout the terms of their employment with Select and Select NY Defendants.

96.     All the Directors of Rehab's job requirements (including others added on by the regional manager) were not possible to be performed and completed within 40 hours of work time per week, and Defendants were well aware of this fact.

97.     The Director of Rehab position carried an inherent on-call obligation that Defendants knew was going on which required them to answer therapists calls and deal with scheduling and staffing matters in evening hours and on weekends, including required computer and data entry work, and to ensure that commencing on Monday, every patient was assigned a therapists, and billing would be maximized.

98.     Dzula and all other Directors of Rehab were discouraged from reporting overtime hours under threats and warnings of disciplinary action for claiming such time, which would include instructions to shave or edit off such overtime if they dared to claim the time.

99.     Therapists, including Manzella, had to routinely work overtime hours to keep up with all job duties and requirements, and which including contemporaneous,meaning daily mandatory completing of therapy notes into the Casamba or Rehab Optima programs.

100.    However, putting in these overtime hours would cause Therapists and Directors of Rehab to fail their productivity requirements and thus all were encouraged to work off the clock, and under-report their hours, and discouraged from both reporting all overtime hours and complaining about the unpaid overtime hours.

101.    Therapists who failed productivity who put in all their overtime hours would be subject to disciplinary action and warnings.

102.    As the supervisors over the Therapists, thus part of management of the companies, Select knew that Therapists worked off the clock and did not report all overtime hours worked, as well as knew that all their time records were routinely inaccurate and unreliable.

103.    Defendants' simultaneously discouraged Dzula and all other Directors of Rehab from reporting overtime hours and complaining about the unpaid overtime hours incurred and work required to be performed in the evenings or on weekend and having to be on call; and Defendants likewise discouraged Therapists from reporting all overtime hours worked or complaining about unpaid overtime hours through the pressure to maintain productivity which if such hours were all reported would cause the productivity rates to fail.

104.    All Therapists are assigned productivity requirements  (%) meaning that they need to have patient treatment billable time (primarily to Medicare) of  this percentage of their total weekly work hours reported.

105.    Thus, if a Therapist or Director of Rehab's records and reports all their actual work hours, including overtime hours and times spent while working during recorded or deducted meal breaks, their productivity % fails and they are subject to disciplinary action, warnings and risks of losing their jobs.

106.    Defendants maintained a De Facto policy against any Therapist claiming or Director of Rehab reporting overtime hours for any work week, even when it was both impossible to complete all the job requirements in the 40 hours, and even when management knew they were working off the clock and working more than 40 hours routinely and after the hours when treatment was provided to patients.

107.    Thus Manzella and Dzula, like other Therapists, were left with a choice:  suffer to work off the clock overtime hours or do the work on the clock and find themselves disciplined and subject to termination of employment.

108.    Therapists could not cancel therapy appointments on the last day of the workweek, or any other days to avoid incurring overtime hours. The treatment of patients, documentation, notes and attending required meetings was never a precise set amount of time such that during the week she would not know each day the exact amount of time she would need to work, or the total she would have by the end of the week or last day of the workweek.

109.    The precise amount of overtime hours spent are believed to be primarily contained in the Defendants' records from the activity logs, and time stamp data from Defendants' programs and systems, records which Plaintiffs will seek in discovery to be able to more precisely be able to determine the overtime wages owed.

110.    From the beginning of Manzella's employment, she too was explained the **Select Company De Facto Policy**:  do whatever you have to in order to meet goals, complete all job duties, hit productivity requirements, and as needed, work off the clock.

111.    Upon information and belief, the Directors of Rehab in the great majority of locations are all compensated as hourly, non-exempt employees pursuant to a single and common

compensation plan.  Moreover, prior to 2021, all newly hired and employed Directors of Rehab were hourly, non-exempt employees.

112.    Upon information and belief, at each location, Defendants employ 5 to 10 or more full time Therapists, including PRN therapists, such that the class of similarly situated therapists may be upwards of 1800 or more for the FLSA Collective Period.

113.    All Therapists are paid on an hourly basis, and classified as non-exempt employees even to the present.

114.    Defendants have maintained a single job description associated with the Program Manager, Director of Rehab or Rehab Director positions at any given time on a nationwide basis and have posted such jobs demonstrating the job requirements for all Directors of Rehab in the U.S. are similar, if not identical.

115.    Similarly, Defendants maintain a nationwide single job description for each of the Therapist or Therapy positions, including in the state of New York.

116.    Further, upon information and belief, all persons employed as Directors of Rehab and Therapists have been required to perform their job duties in a uniform, similar manner; all are supervised and managed according to the same national standards and required to work under uniform policies and procedures set by the Defendants applicable to all offices or locations.

117.    All Directors of Rehab were discouraged from reporting the overtime hours worked through Defendants' De Facto Policy, including pressure from superiors and by fear and intimidation about complaining of the off the clock hours and of being terminated.

118.    The company's regional managers and VP's discouraged Directors of Rehab from complaining about the overtime hours and against clocking overtime work, yet pressured and encouraged them to work on weekends and as many hours as required to perform all job

requirements and acknowledged they knew this off the clock overtime was required and being done.

119.    Defendants maintain a nation-wide and company policy of willfully refusing to pay overtime wages for all overtime hours worked by Directors of Rehab and Therapists despite clear and actual knowledge that Directors of Rehab and Therapists, including Plaintiffs, have routinely worked overtime hours which are unreported and "off the clock".

120.    Upon information and belief, all Directors of Rehab are supervised by Regional Managers and VP's who very closely monitor their performance, production and are aware when employees performed work on weekends or outside or away from the office and beyond regular business hours.

121.    At all times material hereto, Plaintiffs and all other similarly situated employees were joint employees of Defendant during the terms of their employment and the Defendants are covered employers subject to the overtime wage requirements of the NYLL and FLSA.

122.    Indeed, at all relevant times, Defendants' employee manuals and company policies inform hourly paid employees such as Plaintiffs and all other Directors of Rehab and Therapists that they were entitled to be paid premiums for overtime hours worked at time and one half their regular rates of pay.

123.    Pursuant to FLSA §207, and the NYLL ,Defendants, as the employers of Plaintiffs and other similarly situated Directors of Rehab and Therapists were required to and are still required to pay them one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

124.    Therapists' treatment minutes are tallied and put into a program or application and then compared to their work hours and then scrutinized by management.  If productivity is low,

meaning not treating enough patients within the assigned 40 hours of paid time, Therapists are subject to discipline.

125.    Thus, Therapists (which includes Dzula and all other Directors of Rehab as they also worked as Therapists) are strongly discouraged against working on the clock for their routinely required overtime hours of work, much of which is routinely necessary in order for each person to complete the administrative work and reporting, and notes.

126.    Defendants maintained a "code of silence" when it came to the issue of overtime hours and overtime wages, with literally no company meetings or discussions about the requirements of the FLSA or NYLL. Meanwhile, Defendants did not discipline Plaintiffs or any other Director of Rehab or Therapist that they clearly knew were performing work off the clock and working away from the office, including working on weekends.

127.    Defendants maintained a culture and environment of discouraging and intimidating Directors of Rehab and Therapists from submitting or reporting overtime hours worked; warning they had to find a way to do all their work and keep up, sacrificing personal time, or they would be subjected to termination of their jobs.

128.    Defendants have not, throughout the relevant FLSA Collective Period or the NYLL Class Period, accurately and properly clocked, tracked or recorded the actual working hours of each Director of Rehab and Therapist in all of their facilities or locations.

129.    Directors of Rehab and Therapists could not simply just say on Friday morning they hit 40 hours and thus they must go home and cease working until Monday. If they did, they would certainly have faced discipline and termination, as well as put the health and well-being of patients in jeopardy who might not receive the therapy that was medically necessary and required.

130.    But for the overtime hours worked by Directors of Rehab, including on-call time, staffing and scheduling inherent in the position, the facilities would not operate properly, efficiently and patients would suffer, and that would lead to in all certainty termination of their employment.

131.    Manzella, like all other Therapists, if she failed to timely and completely input and log in all their treatment notes and reporting while doing so off the clock, not only could she be in violation of regulations and standards of professionalism, she also would be subject to termination of employment.

132.    All Directors of Rehab and Therapists were trained and expected to perform their job duties in respectively similar manners throughout all Defendants' locations on a national basis, and thus the same in all NY locations or facilities, and all were subject in NY locations to identical company policies and procedures, and employment rules.

## ALLEGATIONS FOR THE NEW YORK LABOR LAW VIOLATIONS AND RULE 23 NYLL CLASS ACTION AGAINST ALL DEFENDANTS

133.    Plaintiffs Manzella and Dzula bring and assert claims against all Defendants, jointly and severally, pursuant to New York Labor Laws, individually, pursuant to Rule 23, as a class action on behalf of all similarly situated putative class members comprised of the following 1 or 2 NYLL class(es):

**If a Single Collective Group/Class, All hourly paid non-exempt employees:**

**All persons employed as hourly paid Program Managers, Directors of Rehab, Program Directors, Occupational Therapists (OTR), Physical Therapists (RPT), Certified Occupational Therapy Assistants (COTA), Physical Therapist Assistants (PTA), Speech Language Pathologists (SLP), or other persons performing similar hourly, non-exempt positions under various other job titles used to describe the same positions, and who are currently employed by, or were previously employed in the State of NY by Select Rehabilitation LLC or by Select PT OT & SLP Rehabilitation NY PLLC within the period of 6 years preceding the filing of this lawsuit to the date of trial in this action**

**If Two Classes or separate groups**:  (Plaintiffs may proceed with seeking conditional certification of 2 separate classes or groups of similarly situated (CLASS A and CLASS B) as follows:

**CLASS A**:  **ALL PROGRAM MANAGERS AS FOLLOWS:**

> All persons employed as hourly paid Program Managers, Directors of Rehab, Program Directors or other persons performing similar hourly, non-exempt management or supervisory positions under various other job titles, and who are currently employed by, or were previously employed in the STate of NY by Select Rehabilitation LLC or Select PT OT & SLP Rehabilitation NY PLLC within the period of 6 years preceding the filing of this lawsuit to date of trial in this action.

**CLASS B**:  **ALL THERAPISTS:**

> All persons employed as an hourly paid Occupational Therapist (OTR), Physical Therapist (RPT), Certified Occupational Therapy Assistant (COTA), Physical Therapist Assistant (PTA), Speech Language Pathologist (SLP), or other persons performing similar hourly, non-exempt positions under various other job titles, and who are currently employed by, or were previously employed in the State of NY by Select Rehabilitation LLC or Select PT OT & SLP Rehabilitation NY PLLC within the period of 6 years preceding the filing of this lawsuit to date of trial in this action.

134.    Select's facilities in NY follow the same policies and practices as the rest of Defendants' facilities in the U.S.

135.    All Therapists in the state of NY, within the preceding 6 years, along with most Directors of Rehab, were classified as hourly, non-exempt employees entitled to be paid time and one half for all hours worked in excess of 40 in each and every workweek.

136.    In the state of NY, Defendants likewise maintained a De Facto policy under which Manzella and Dzuala, all similarly situated and putative class members, suffered to work overtime hours off the clock in order to complete all their job duties and maintain Defendants' productivity requirements.

137.    Plaintiff Dzula and Plaintiff Manzella, routinely worked more than 40 hours per week, and did so off the clock and by submitting understated weekly time records all with the knowledge and encouragement of their direct manager or director throughout the terms of their employment.

138.    The NYLL Class is so numerous that joinder of all NYLL Class members in this case would be impractical.   Plaintiff reasonably estimates there are 1,800 or more Rule 23 Class members over the relevant 6 year class period.  NYLL Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

139.    Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the NYLL Class as a whole.

140.    Additionally, prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

141.    The individual overtime claims can be small, and therefore unlikely to be adjudicated on an individual basis and thus the prospect of no adjudication is inferior to the class action alternative.

142.    Numerosity is satisfied as upon information and belief, Defendants operate or have operated in the relevant 6 year class period, upwards of 30 or more locations in the State of New York. Upon information and belief, each location employs at least 1 Director of Rehab and an average of 7 or more Therapists.  Plaintiff estimates there are approximately up to 1800 persons in the NYLL Class, which could be significantly depending upon turnover during the six (6)-year NYLL Class Period.

143.    Common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 NYLL Class or classes and are identical for all class members including:

a.  Whether Defendants violated the NYLL by failing to pay premium compensation to the New York Class members who worked in excess of forty (40) hours per week;

b.  Whether Defendants violated the NYLL by permitting Plaintiffs and all class members to suffer to work during meal breaks and without non-working, uninterrupted meal breaks of 30 minutes;

c.  Whether Defendants violated NYLL by failing to keep accurate records of employees' hours worked and meal breaks;

d.  Whether the Plaintiffs in the NYLL Class were willfully permitted to suffer to work off the clock and pursuant to a De Facto policy against reporting overtime hours or working overtime hours on the clock in violation of the NYLL wage laws;

e.  Whether Defendants knew or should have known that DOR/PM and Therapists were working off the clock, including overtime hours without being paid for all such hours or had actual or constructive knowledge of the off the clock work;

f.  Whether Defendants acted willfully in violation of the NYLL such that a 6-year SOL should apply;

g.   Whether Defendants' actions and pay practices lacked a good faith basis under the NYLL for its actions such that liquidated damages should be awarded; AND

h.  The proper measure of damages sustained by members of the NY Class and the restitution owed to them.

144.    Plaintiff Dzula and Manzella claims are typical of those of the NYLL Class.  Plaintiffs Dzula and Manzella, like other members of this putative classes, routinely and pervasively throughout their term of employment within the relevant 6 year class period, suffered to work off the clock overtime hours and were subjected to Defendants' unlawful pay practices, including the De Facto policy against working on the clock when working required overtime hours.

145.    Dzula's job duties and responsibilities as a Director of Rehab were also typical of other members of the NYLL Class, including scheduling, staffing, reports, audits, handling patient issues, patient treatment productivity requirements, documenting treatment (therapy) in contemporaneous notes, and all other responsibilities as published in the Select Company job description applicable to all Directors of Rehab.

146.    Manzella's job duties and responsibilities as a SLP (Therapist) were also typical of other members of the NYLL Class, including patient treatment, providing therapy and documenting the therapy/treatment in contemporaneous notes, while maintaining the productivity requirements, and all other responsibilities as published in the Select Company job descriptions applicable to Therapists.

147.    Further, Manzella had similar, if not identical, job duties and responsibilities of all other Therapists and as stated in the Select Company Job Description. All Therapists had similar job requirements which primarily included providing therapy for patients within their respective medical specialty; completing mandated treatment and therapy notes; initial evaluations and discharge summaries.

148.    All NYLL Class members were Directors of Rehab and concurrently treating Therapists, and all classified as hourly, non-exempt employees, (with the exception of perhaps Directors of Rehab hired in 2021 and which is a small minority of the Directors of Rehab were

hired as exempt) and who comprise the putative class.  Plaintiffs do not seek to include those Directors of Rehab who were strictly paid on a salary basis throughout the relevant NYLL Class Period.

149.    Plaintiffs Dzula and Manzella will fairly and adequately represent and protect the interests of the putative members of the NYLL Class because they have no disabling conflict(s) of interest that would be antagonistic to those of the other class members.

150.    Plaintiffs have retained legal counsel who is competent and experienced in class and collective action wage and hour litigation, including NYLL wage claims and other state overtime class actions.

151.    Defendants' have acted on grounds that apply generally to the NYLL Class in that they have common policies and practices of: (a) refusing to pay overtime compensation for all hours worked and permitting class members to suffer to work off the clock; (b) failing to maintain and provide accurate time records for all members of the NYLL Class.  Accordingly, injunctive and declaratory relief is appropriate for the NYLL Class as a whole.

152.    Class treatment is superior to alternative methods to adjudicate this dispute because Plaintiffs Manzella and Dzula and the similarly situated NYLL Class suffered similar treatment and harm as a result of Defendants' systematic policies and practices, including the unlawful pay practice of  permitting them to suffer to work off the clock pursuant to a company De Facto policy, and because absent a class action, Defendants' unlawful conduct will likely continue unremedied and unabated given that the damages suffered by individual class members are small compared to the expense and burden of individual litigation.

153.    Class certification is also superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.

Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. See *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins.,* 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

154.   Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION**
**PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202**

155.   Plaintiffs reallege and incorporate by reference paragraphs one (1) through 133 of this Complaint and fully restate and reallege all facts and claims herein as if fully stated.

156.   Defendants have willfully and intentionally engaged in a common pattern and practice of violating the provisions of the FLSA, by failing to pay all Directors of Rehab and Therapists, and the FLSA Collective, the required overtime wages and premiums for all hours worked over 40 in each and every work week.

157.   Plaintiff Dzula and all other hourly non-exempt Directors of Rehab and Therapists who worked under other titles or variations of these titles used to describe the same position including Directors of Rehab, routinely worked on weekends and hours away from the office and all such time should have been counted as compensable overtime hours during each and every workweek that Dzula and all other Directors of Rehab worked.

158.   Plaintiffs Manzella, Dzula, and the FLSA Collective members employed under various titles and disciplines, routinely worked off the clock hours and all such time should have been counted as compensable overtime hours.

159.    Defendants knew that Plaintiffs, Directors of Rehab and Therapists routinely performed work off the clock, both in the office and away from the office.  Evening and weekend work included being on call for other staff members, scheduling and other matters in which a Director of Rehab had to be able to receive and respond to emails, phone calls and text messages after hours. Directors of Rehab were prohibited from clocking in or reporting these additional hours.

160.    When Plaintiff Dzula and all other Directors of Rehab did perform such out of the office work, their managers were informed and made aware of this off the clock work and demonstrated acquiescence and expressed their expectations that such work comes with the job, and never wrote up Dzula nor formally disciplined Directors of Rehab for doing so.

161.    Plaintiff Dzula and other Directors of Rehab had no means to report the times they spent working after hours but they were required to handle and respond to emails, text messages and phone calls. Defendants knew that off-the-clock work was going on in its locations and facilities.

162.    Similarly, inherent in the staffing and scheduling responsibilities of Directors of Rehab, Plaintiff Dzulla and Directors of Rehab had to perform scheduling and staffing work for the week ahead on their so-called days off on Saturdays and Sundays.  Dzula and other Directors of Rehab routinely performed this weekend work with the knowledge of their superiors, and thus the company.

163.    Directors of Rehab, including Dzula, were required and expected to use personal cell phones to respond to facility and staff phone calls away from the facility;  Directors of Rehab were required and expected to respond to employees when they contacted them outside of the office for any scheduling or work related issues.

164.     Defendants willfully failed and refused to provide any real means for Directors of Rehab to report these additional times and work hours, and which should have been counted as compensable time and reporting as required by the FLSA and the regulations.

165.     Defendants knew that Manzalla and all other similarly situated Therapists likewise were suffering to work off the clock to maintain productivity while complying with the De Facto policy of working off the clock to complete all their job duties.

166.     The double edged sword as expressed to the Therapists by Defendants' managers was that if you worked overtime hours on the clock it would destroy your "productivity" and lead to discipline or termination of employment. Defendants discouraged Therapists from working overtime hours on the clock as well as blatantly encouraging and approving off-the-clock work.

167.     Plaintiff Manzella's and Therapists' schedules were so loaded with patients all day long, Therapists found it necessary and inherent in their job to have to complete all their therapy notes and reporting requirements off the clock or risk their own license and risk termination of employment.

168.     Plaintiffs were not permitted to and prohibited from just canceling patients from their schedules in order to be certain the work would not put them in overtime hours or to avoid incurring necessary overtime hours.

169.     Defendants had a duty and obligation under the FLSA, pursuant to CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including DOR, Therapists and other persons performing similar roles under any job titles.

170.     As Defendants failed to institute any means to account for this required on-call time for DOR to log in such communications, the process knowingly left Dzula, and all other similar

employees, subject to working off the clock and routinely working overtime, compensable hours without being paid for all the hours worked.

171.    Defendants turned a blind eye to the FLSA Collective working additional hours. Defendants ignored the fact that time sheets showed exactly eight (8) hours every day, and forty (40) hours every week. Defendants knew that the timesheets were clearly an inaccurate, understatement of all Plaintiffs' actual working hours. This is a willful violation of the overtime requirements of Section 207 of the FLSA, and throughout the 3 years preceding the filing of this complaint to the present.

172.    Defendants' actions constitute permitting Plaintiffs and all other Directors of Rehab and Therapists to suffer to work off the clock without being paid for all hours.

173.    The FLSA requires any employer who has actual or constructive knowledge of employees working off the clock to either cease and stop the conduct, or be held liable and responsible for paying the overtime premiums for such off the clock hours, in addition to double the sum as liquidated damages.

174.    Said differently, while Defendants had a so-called policy to prevent and deter Plaintiffs from working off the clock, Defendants knowingly, actively and/or constructively permitted Plaintiffs and all others similarly situated to suffer to work off the clock and without being paid for all such overtime hours while reaping the benefits of their unpaid labor and sweat. Thus, Defendants knowingly took no action(s) to enforce its own alleged company policy, and knowingly disregarded it.

175.    Defendants knew of or had reasons to know Plaintiffs worked off-the-clock but did nothing to preclude or halt it. By their failure, Defendants tacitly encouraged and permitted Plaintiffs and the FLSA Collective to work off-the-clock overtime hours.

176.    Defendants maintained a De Facto Policy to discourage reporting and claiming overtime hours, but meanwhile reaped the benefits of the additional work, and saved many millions of dollars in labor costs.

177.    At any given time throughout the preceding 3-year period, Regional Managers and others in supervisory positions were aware Plaintiff Dzula, Plaintiff Manzella and the FLSA Collective worked off the clock and that their timesheets were an inaccurate, underreporting of their work hours.

178.    Defendants coerced the FLSA Collective to underreport their compensable hours by intimidating DOR and Therapists. Defendants told Plaintiffs to focus on their productivity goals and pressured them to keep up or be subject to disciplinary action, including termination of their employment.

179.    Defendants intentionally created a work environment that was oppressive, laced with fear and intimidation against reporting overtime hours and discouraged Plaintiffs from complaining about not being paid for all overtime hours. Management told the FLSA Collective that reporting, claiming or asking for overtime compensation would draw ire and scrutiny of management.

180.    Defendants willfully and with reckless disregard for the requirements of the FLSA, failed to pay Plaintiffs and the FLSA Collective a premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

181.    Defendants do not have a good faith basis for the unlawful pay practices described above. Accordingly, Plaintiffs and each and every member of the putative class is entitled to be paid their overtime wages owed (at rates of one and one half times their respective regular rates of

pay) in addition to an equal amount as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

182.    Defendants knowingly and willfully failed to track the hours worked by Plaintiffs and the class of similarly situated employees who comprise the FLSA Collective or Collectives.

183.    Defendants encouraged and pressured Directors of Rehab and Therapists to work as many hours as they had to off-the-clock in order to handle all their job duties and responsibilities. Defendants had direct, if not constructive knowledge of Directors of Rehab and Therapists working overtime hours while off the clock.

184.    By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiffs and the FLSA Collective, Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et seq., including 29 USC Sec. 211(c) and 215 (a).

185.    Defendants knew or should have known that the act of permitting Directors of Rehab and Therapists to work off the clock, including working on weekends, evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

186.    To summarize, Defendants willfully violated the FLSA by instituting the following unlawful pay practices applicable to Plaintiffs, and the FLSA Collective:  a) requiring Directors of Rehab to be on call and perform necessary staffing and scheduling work away from the office, on weekends and without a means to report this additional time and;  b) maintaining a de facto policy preventing Directors of Rehab and Therapists from reporting all overtime hours worked; and c) permitting Directors of Rehab and Therapists to suffer to work off the clock without being paid for all hours worked.

187.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the members of the FLSA Collective Plaintiff Class or classes, composed of all other present and former Directors of Rehab, Therapists and others similarly situated, have suffered economic damages by Select's failure to pay overtime compensation in accordance with FLSA §207.

188.    Due to Defendants' willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations committed by Defendants pursuant to 29 U.S.C. §255(a), and Plaintiffs and those similarly situated are required to be paid for all unpaid overtime hours incurred over the preceding three-years from the filing of this complaint.

189.    As a result of Defendants' unlawful acts and pay practices described herein, Plaintiffs and the FLSA Collective of all other similarly situated non-exempt employees have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of all such amounts, plus the payment of liquidated damages in an amount equal to the overtime wages due and awarded, payment of prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

190.    Defendants actions should be declared in violations of FLSA and Defendants should be both enjoined and prohibited from continuing subject the class or classes of Therapists and Directors of Rehab to the same unlawful pay practices found to have been violated by this court or by a judgment rendered against it.

191.    The precise amount of overtime hours spent are largely contained in the Defendants' records from the activity logs, and time stamp data from accessing and performing work in Defendants' programs and systems, records which Plaintiffs will seek to obtain in

discovery to be able to more precisely be able to determine their overtime wages owed, in addition to phone records.

192.    Pursuant to the Supreme Court's holding in *Anderson v Mt. Clemens Pottery Co 328 U.S. 680 (1946)*, since the time records of Defendant are inaccurate and unreliable, Plaintiffs may establish the amount of unpaid overtime hours they worked from their estimations, and Defendants thus must come forward and prove the precise number of hours the Plaintiffs worked if they disagree or refute the hours claimed by the Plaintiffs.

**<u>COUNT II</u>**
**<u>FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED IN VIOLATION OF 29 CFR PART 516</u>**

193.    Plaintiffs reallege and incorporate by reference paragraphs one (1) through 133 of this Complaint and fully restate and reallege all facts and claims herein as if fully stated.

194.    Evidence reflecting the precise number of overtime hours worked by Plaintiffs and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

195.     However, and to the extent records are unavailable, Plaintiffs, and members of the Class, may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

196.    All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

197.    With respect to an employee subject to the FLSA provisions, the following records must be kept:

a.   Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

b.   Hour and day when work week begins;

c.   Regular hourly pay rate for any week when overtime is worked;

d.   Total hours worked each workday and each workweek;

e.   Total daily or weekly straight-time earnings;

f.   Total overtime pay for the workweek;

g.   Deductions from or additions to wages;

h.   Total wages paid each pay period; and

i.   Date of payment and pay period covered

198.   Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. § 215(a)(5); *Also See, Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792 (10th Cir. 1976).

199.   Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act.  An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.  *See, Wirtz v. First State Abstract Ins. Co.,* 362 F.2d 83 (8th Cir. 1966); *Boekemeier v. Fourth Universalist Soc'y,* 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

200.   An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See, Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

201.    Defendants failed to accurately and contemporaneously record, track and report the Plaintiffs' and Class of similarly situated members', time and work hours as required under the FLSA and the related DOL regulations.

202.    Plaintiffs here, and including those opt in Plaintiffs in this action, worked off the clock, and Defendant knew they worked off the clock by direct or constructive knowledge.

203.    Defendants thus knew its time records were inaccurate and unreliable as Therapists and Directors of Rehab worked off the clock.

204.    Additionally, Defendants either edited off overtime or directed employees to remove overtime from their time records. These actions constitute a record keeping violation of 29 CFR part 516, making Plaintiffs' time records inaccurate and unreliable.

205.    Thus, Defendants failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2 and 29 U.S.C. §§ 211, 216 and related laws.

206.    Defendants' time records should be declared unreliable, inaccurate and a violation of 29 CFR part 516, and any and all remedies and relief granted to the Plaintiffs and all others similarly situated who opt into this action.

**COUNT III**

**VIOLATIONS OF THE OVERTIME REQUIREMENTS OF NEW YORK LABOR LAWS  ARTICLE 19 §§ 650, et seq (and supporting regulations)**

207.    Plaintiffs reallege and incorporate by reference paragraphs one (1) through 133 of this Complaint and fully restate and reallege all facts and claims herein as if fully stated.

208.    The overtime wage laws for hourly paid, non-exempt employees under NYLL are nearly identical in all respects to the FLSA, both of which mandate payment for all overtime hours worked by hourly paid employees.

209.    At all times relevant to the action, Select Rehab was an employer covered by the overtime mandates of the NYLL § ARTICLE 19 §§ 650, et seq.

210.    Plaintiffs, and all members of the NYLL Class are employees entitled to the NYLL protections as employees under this Act.

211.    Plaintiffs Manzalla and Dzula were at all times material hereto members of the NYLL Class and are similarly situated to the NYLL Class members they seek to represent.

212.    The NYLL entitles employees to compensation for every hour worked over 40 in each workweek, at a rate of time and one half their regular rate of pay that Defendants knew or should have known about.

213.    Plaintiffs Manzella and Dzula were classified as non-exempt, hourly-paid employees under the state and federal wage laws and entitled to be paid premiums for all hours worked more than 40 in each workweek.

214.    Select Rehab violated the NYLL by regularly and repeatedly failing to compensate Plaintiffs for all overtime hours worked, meaning all hours worked more than 40 in any work week.

215.    The foregoing conduct, as alleged, violates NYLL and any relevant regulations adopted by the state of New York.  At all relevant times, Select Rehabilitation LLC and Select NY were, and continue to be, "employers" within the meaning of the NYLL.  At all relevant times, Defendants jointly employed Plaintiffs as employees, including each of the members of the NYLL Class or classes, within the meaning of the NYLL.

216.    Plaintiffs Manzella and Dzula, suffered to work off the clock overtime hours, with Defendants' knowledge throughout the NYLL Class Period.

217.    Defendants willfully violated NYLL by failing to pay Plaintiffs Manzella, Dzula and members of the NYLL Class overtime premiums for all work performed in excess of forty hours in a workweek.

## COUNT IV  MEAL BREAK VIOLATIONS OF NYLL SECTION 162

218.    Plaintiffs reallege and incorporate by reference paragraphs one (1) through 133 of this Complaint and fully restate and reallege all facts and claims herein as if fully stated.

219.    Plaintiffs were required to be provided 30 minute, non-working and uninterrupted meal breaks each day they worked.

220.    Plaintiffs were routinely unable to take a 30 minute, uninterrupted, non-working meal break, also called a bona fide meal break.

221.    Each day, Plaintiffs and members of the NYLL Class had to perform work during meal breaks, including reviewing notes, charts, entering notes, and other work related activities in order to maintain productivity and complete all job duties and responsibilities.

222.    Defendants knew that Plaintiffs suffered to work during meal breaks.

223.    Defendants knew that their time records related to meal breaks, were inaccurate and represented meal breaks that were not fully taken by Plaintiffs.

224.    Plaintiffs are entitled to be compensated for all meal breaks deductions in which Plaintiffs performed any work during, and were not completely relieved of work activities, and to the extent such time equated to more than 40 hours in any workweek, to be paid to them at a rate time time and ½ their regular rates of pay for all hours, plus an equal sum in liquidated damages.

## COUNT V - VIOLATION OF THE RECORD KEEPING REQUIREMENTS OF THE NYLL

225.     Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1 through 133 as if fully set forth herein.

226.     NYLL § 195(4) requires every employer to establish and maintain, for at least three years, inter alia, payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

227.     NYLL § 661 requires every employer to maintain, inter alia, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

228.     12 N.Y.C.R.R. § 142-2.6 requires every employer in miscellaneous industries to establish, maintain and preserve for six years weekly payroll records showing, inter alia, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

229.     NYLL § 195(3) requires that every employer furnish each employee with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

230.     12 N.Y.C.R.R. § 142-2.7 requires every employer in miscellaneous industries to furnish each employee a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

231.     Defendants time records knowingly contain false and inaccurate break time entries and other hours of work, and Defendants encouraged and pressured Therapists and PM/DOR to falsify time entries and under report hours as well as to report 30 minute breaks

that were neither taken or which the employees were ever relieved of work duties and activities.

232.    Defendants failed to comply with the notice and record keeping requirements of NYLL §195(1) and 195(3), resulting in penalties under NYLL § 198(1)(b) and 198(1)(d) for Plaintiffs and the NYLL Class.

233.    Defendants' time records are inaccurate and unreliable as to the work hours Plaintiffs and all class members worked, and thus must be declared so and inadmissible evidence in this action or subject to a limiting instruction by this court when charging the jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs ADRIANNA MANZELLA and MICHELLE DZULA, individually, and on behalf of the FLSA Collective and the NYLL Class or classes, respectfully prays for the following relief:

A.  Find that the Defendants willfully violated the FLSA and related DOL regulations, and the NYLL and related regulations and Declare that Defendants are jointly and severally liable for the wage claims complained of herein;

B.  Enjoin the Defendants from continuing their unlawful pay practices and declare their actions to be unlawful;

C.  Conditionally certify the FLSA claims to be maintainable as a collective action pursuant to 29 U.S.C. §216;

D.  Award unpaid overtime wages, plus an equal sum in liquidated damages pursuant to the Fair Labor Standards Act for a 3 year period and the same damages for the

NYLL violations for a period of 6 years, plus applicable penalties and pre-judgment interest;

E.   Designate Plaintiffs MANZELLA and DZULA as class representatives and Mitchell Feldman, Esq. as class counsel of the FLSA Collective;

F.   Certify the NYLL Class claims in this case as a class action pursuant to Fed. R. Civ. P. 23;

G.   Designate Plaintiff MANZELLA and DZULA as class representatives and Mitchell Feldman, Esq. as class counsel of the NYLL Class or Classes;

H.   Award Plaintiffs, the FLSA Collective and the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action, including but not limited to expert fees; AND

I.   Grant Plaintiffs, the FLSA Collective and the NYLL Class any such other and further equitable relief that the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted, February 1, 2023.

/s/ *MICHAEL J. BORRELLI, Esq.*
Managing Member
Borrelli & Associates, P.L.L.C.
910 Franklin Avenue, Suite 200
Garden City, New York, 11530
Tel. No. (516) 248 - 5550

Fax No. (516) 248 - 6027
mjb@employmentlawyernewyork.com

**Mitchell L. Feldman, Esq**
Florida Bar No. 0080349
FELDMAN LEGAL GROUP
6916 West Linebaugh Avenue, # 101
Tampa, Florida 33625
Tel: (813) 639-9366
Fax: (813) 639-9376
Mfeldman@flandgatrialattorneys.com
Mail@feldmanlegal.us
*Attorneys for Plaintiffs and the classes of similarly
situated*
*\*to apply to being admitted pro hac vice*